## S. L. ALLEN *v.* R. N. MILLER ET AL.

[54 South. 731.]

1. DEEDS. *Covenants of warranty. Breach. Damages. Subrogation.*

   The limit of a warrantor's liability for breach of warranty is the amount of the purchase price with interest, but the warrantor can only be made to pay the warrantee the actual amount paid out by him to protect his title.

2. DUTY OF WARRANTEE.

   While the warrantee is not put to the useless expense of a fruitless litigation against an incumbrance or paramount title that must eventually prevail, yet he assumes the risk of judging correctly as to the title or incumbrance which he buys in, and must establish, as a condition precedent to his recovery either at law or equity, that it was a paramount title or lien covered by his warranty and that he acted under a necessity to save the estate.

3. COVENANTS. *Breach. Defenses.*

   That a warrantee of a title based on a mortgage foreclosure sale, on the foreclosure being held invalid, took a quit claim deed from the mortgagor, did not relieve the warrantor from liability for breach of covenant, though the quitclaim deed was without consideration and was taken with intent to prejudice the rights of the warrantor.

4. COVENANTS. *Actions. Defenses.*

   T executed a trust deed to a mortgage company to secure a loan, and on default the land was sold by a substituted trustee and bid in by the company, which thereafter sold it, and M acquired it by mesne conveyances, and conveyed to A with covenants of warranty; he taking possession. Thereafter T sued to cancel the conveyance to the mortgage company and all subsequent conveyances, on the ground that the apointment of the substituted trustee, by whom the land was sold, was not filed for record; and all subsequent grantees were made parties, and the decree canceled all of the conveyances, and ordered T to pay the debt to the mortgage company, and, on his failure to do so, that the land be sold to pay the debts. A thereafter secured a quit claim deed from T to the land, without notice to M, and thereafter sued M for breach of

covenant of warranty to recover the money paid to T. The mortgage company meanwhile assigned its claim as fixed by the decree to M. who sued to enjoin A's suit, and seeks to set it off against A's claim for breach of warranty. *Held* that, to avoid a circuity of action, M could set off his claim under the decree, which was for an amount as large or larger than A's claim, against the latter's claim for breach of covenant of warranty.

APPEAL from the chancery court of Copiah county.

HON. H. CASSIDY, Special Judge.

Suit by R. N. Miller against S. L. Allen et al. From a judgment overruling a demurrer to the bill defendant, Allen, appeals.

*D. M. Miller,* for appellant.

It is well settled in this state that the covenantee may purchase a paramount title which is being asserted against him, and under which he must ultimately be evicted. This amounts to a constructive eviction and he may sue upon the covenant. See *Kirkpatrick* v. *Miller,* 50 Miss. 521; *Dyer* v. *Brittain,* 53 Miss. 270; *Cummings* v. *Harrison,* 57 Miss. 275.

The covenantee may recover in such action the full amount expended by him in good faith in protecting the title conveyed to him by his warrantor, and other such damages as he has sustained, not exceeding the purchase money together with interest thereon. See *Holloway* v. *Miller,* 84 Miss. 776; *Brooks* v. *Black,* 68 Miss. 161.

We contend that since the sale made by Willing, substituted trustee, was void, Lyell, trustee, or the Bank of Wesson, having paid the mortgage company debt, then Lyell, trustee, became the equitable assignee of that debt and is subrogated to all rights of the original *cestui que trust,* and through the subsequent conveyances from Lyell to Miller and from Miller to Allen, this equitable right passed to Allen. Allen, who is in possession of the land, under his warrantor, Miller, and his remote vendors, Lyell, Bank of Wesson and Earnes, is the only

person who can enforce such equitable right in a court of equity. See *Bonner* v. *Lessley,* 64 Miss. page 392; 56 Miss. 553.

Allen, as the equitable assignee of the original mortgage debt had a right to use this claim in the settlement with Tillman, as doubtless he did, and so long as he acted in good faith with Miller, such use of the debt cannot be questioned.

We contend that all the rights, both legal and equitable to the land passed from Miller under his deed to Allen, and that Miller cannot assert this claim against Allen as a set-off to the damages suffered by Allen by reason of the failure of warranty in Miller's deed. For this reason we maintain that the court should have sustained the demurrer of Allen to the bill of complaint and that it was error for the court to overrule the demurrer. For this reason, we think the decree of the chancellor should be reversed.

*R. N. Miller,* for appellee.

Miller files his bill in the chancery court and enjoins Allen's suit at law, and tenders Allen the incumbrance, that is, asks that demand of Allen against him be offset against the debt fixed by the decree, held by Miller. Miller is not setting up the decree or incumbrance against Allen, except so far as is necessary to discharge his liability under his covenant of warranty to Allen.

The law of the case is simple. It cannot be disputed that neither Miller nor Allen could acquire an outstanding title or incumbrance and set it up to defeat the rights of the other to the title warranted. *Kirkpatrick* v. *Miller,* 50 Miss. and a number of other similar cases.

In the first place, Allen could not sue Miller at all for the money by him paid out to Tillman because he did not buy from Tillman the paramount title, and it is perfectly well settled that the vendee in buying an outstanding title is bound to act in good faith with his vendor and he must

buy the title which is not only paramount to his own
title, but it must be paramount to the title of everybody
else to the land. *Dyer* v. *Britton,* 53 Miss 270; 11 Cyc.
1125, note 98, and cases cited.

"In order to constitute a breach of covenant of war-
ranty the title or right to which the covenantee yields
must be not only paramount to his own title or right but
must be paramount to that of anyone else." 11 Cyc.
*supra.*

There is a distinction between setting up an outstand-
ing title by a covenantor and asking credit for it by way
of discharge of his covenant, which counsel for the appel-
lant seems to have overlooked. I repeat I am not set-
ting up this decree as against Mr. Allen's title; I am
simply asking that it be offset against his demand against
me for breach of covenant. If I had bought an outstand-
ing title and the paramount title, and thus making my
warranty good.

On account of the peculiar facts of this case, I have
only been able to find one case precisely like it. And
that is *Pres. Fellows of Middleburg College* v. *Joseph
Cheny,* 1 Vermont 336.

Argued orally by *R. N. Miller,* for appellant.

McLAIN, C.

The appellant, S. L. Allen, brought suit against R. N.
Miller in the circuit court of Copiah county for a breach
of warranty of title to land. Miller filed a bill in the
chancery court of Copiah county, enjoining the suit at
law, to which bill Allen demurred, and which demurrer
was overruled by the chancellor, and from that decision,
overruling the demurrer, Allen appeals to this court.

To have a clear conception of the legal points involved,
it is necessary to give some of the leading facts. In
1892 W. A. Tillman negotiated a loan of money from the
British & American Mortgage Company, executing a

deed of trust to it upon certain lands to secure the payment of the loan. Default in payment was made in January, 1897. The amount then being due was five hundred and seventy-five dollars.. The mortgage company desired to execute the trust. The original trustee being a nonresident and refusing to act, another was appointed substituted trustee in writing; but unfortunately this appointment of substituted trustee was not filed for record until after the sale was made. At the sale of the property, the mortgage company bid the land in for the amount of the mortgage debt; the substituted trustee executing to it a deed of conveyance. On September 19, 1900, the mortgage company sold the land to one E. A. Earns, executing a special warranty deed. Some time afterwards, Earns went into bankruptcy, conveying the land to J. G. Lyell, trustee, who in turn sold the land to R. N. Miller, on the 24th day of August, 1901. Soon thereafter R. N. Miller conveyed the land to S. L. Allen for the consideration of nine hundred dollars, executing and delivering to Allen a deed of conveyance containing a covenant of warranty. Under this deed Allen went into possession of the land, and has been in possession continuously since. It appears that all of these conveyances were for about the same consideration, that being the amount of the balance of the debt due by Tillman.

On the 12th day of March, 1906, W. A. Tillman, the original owner, filed a bill in the chancery court of Copiah county, attacking the validity of the deed from the substituted trustee and all subsequent conveyances, chiefly upon the ground that, at the time the land was sold to the mortgage company, the appointment of the substituted trustee was not filed for record. Lyell, Miller, and the British & American Mortgage Company were made defendants. Allen filed an answer, and the mortgage company also filed one, making its answer a cross-bill, and asking that, in the event the conveyances were canceled, Tillman be made to do equity by paying the debt. The

chancellor canceled all of these conveyances, as prayed for by Tillman. It was further ordered that Tillman pay the debt to the British & American Mortgage Company, with interest, and, if he failed to do so, decreed that the land be sold to pay the debt. Allen was never evicted, but in that condition of things, with actual notice of this decree, fixing the debt as a charge upon the land, Allen secured from Tillman, without any notice to Miller, a quitclaim deed to the land, and claims to have paid about nine hundred dollars for it. Soon thereafter Allen sued Miller for breach of covenant for the money paid out to Tillman by him.

The British & American Mortgage Company made an assignment of its claim to R. N. Miller, and thereupon Miller filed this suit, and enjoined the suit of S. L. Allen in the circuit court as heretofore stated. He asks that the debt fixed by the decree be taken as an offset against Allen's demand against him. It is alleged that this decree and the debt thereby fixed upon the land due by Tillman, is equal to or larger than Allen claims to have expended in purchasing the quitclaim from Tillman. The foregoing are some of the leading facts in the case.

It is contended by appellant in his brief that all the rights, both legal and equitable, to the land, passed from Miller under his deed to Allen, and that Miller cannot assert this claim of the British & American Mortgage Company against Allen as a set-off to damages by Allen, by reason of the failure of the warranty in Miller's deed. In other words, the appellant seems to contend that Allen, being the last vendee in the chain, was subrogated to the mortgage company's right to the debt, and that, therefore, Miller cannot set it up by way of offset. Under the facts of this case, we do not concur in that view. The main question presented in this case is whether or not Miller can tender Allen this outstanding incumbrance, which is equal to or larger in amount than Allen's demand against Miller, in discharge of his liabil-

ity under his covenant of warranty. All that Allen got from Tillman by the quitclaim deed was Tillman's equity of redemption. He did not secure by this deed the paramount title. This was outstanding, as Allen well knew, in the mortgage company.

The chancery court, in canceling the deeds heretofore described, in that very decree directed that Tillman pay the debt, with interest, then due the mortgage company, and further ordered that, in default of this payment by *Tillman,* the land be sold to satisfy the debt; and this debt, thereby fixed upon the land by the court, is alleged to be more than Allen claims to have expended in purchasing the quitclaim deed from Tillman. Miller admits his liability upon breach of warranty of his deed to Allen. The measure of his liability to Allen on this breach of warranty is the amount of purchase price paid by Allen to Miller, with interest. In no case would Miller be liable to refund more than was actually paid out by Allen to protect his title, and in no event in excess of his liability on his covenant of warranty. Miller is not attempting to set up this decree against Allen's title, but insists that it inures to his own benefit in discharge of his warranty, and is asking that it be taken as an offset against Allen's demand for breach of warranty.

It is alleged that Allen acted in bad faith with Miller. That is a matter the chancery court can consider, if it becomes necessary or proper to do so, after hearing all facts in reference thereto. It is the province of that court to render redress according to the principles of equity and good conscience. In cases of this character, the doctrine of that court is "that he must deal fairly and in fidelity to his warrantor; that while he will not be permitted to break an allegiance to the title under which he entered and holds possession, yet he shall not be put to the useless expense of a fruitless litigation against an incumbrance or paramount title, which must ultimately prevail, but may, if necessary to preserve the estate and

the possession, pay off the one and buy in the other, and for such outlays of money, he shall be reimbursed." *Dyer* v. *Britton*, 53 Miss. 278. We will make this further observation, while on this point, that it is a principle of law worthy to be considered in relation to this question, in the event it becomes necessary to do so by the chancery court, "that the covenantee assumes the risk of judging correctly as to the character and validity of the incumbrance or title which he buys in. He must establish, as a condition precedent to recovery, either at law or in equity, that it was a paramount lien or title against which the warrantor was bound to defend, and that he acted under a necessity to save the estate." *Dyer* v. *Britton*, 53 Miss. 279.

It manifestly appears from this record that Miller is liable to Allen upon his covenant of warranty in the sum of nine hundred dollars, with interest, and this is the limit of his liability. It is equally manifest that Miller has a decree of the chancery court, fixing a charge upon this land for an amount as large or larger than Miller's liability. We think Miller has the right to offer this decree as an offset to Allen's claim, and that the bill is properly before the chancery court, and that it is the correct forum in which to settle the questions here involved, which are somewhat complicated, and, at first impression, somewhat elusive, if not firmly grasped by the mind of the reader. If Miller's tender of the mortgage debt is not an offset of his liability, then it must follow that Miller must pay Allen the money he paid for the land, with interest, and Allen in turn must pay Miller the amount of the debt (decree) fixed upon the land by the decree, or suffer the land sold under the decree. This kind of procedure would be swapping dollars, and such circuitous actions should not be encouraged when it can be avoided.

If this decree owned by Miller is equal to or in excess of his liability to Allen upon breach of warranty of his

deed to Allen, we think it ceases to be material or important, so far as Miller's liability on warranty is concerned, whether the quitclaim deed from Tillman to Allen was with or without consideration, or executed and delivered by collusion, with intent to prejudice the rights of Miller.                          *Affirmed and remanded.*

PER CURIAM.  The above opinion is adopted as the opinion of the court, and, for the reasons therein indicated by the commissioner, the case is affirmed and remanded.